The first case this morning is Curtis Hall v. Nancy Berryhill. Mr. Cohen. Good morning, Your Honors. May it please the Court and Counsel, I'm Charles Cohen on behalf of the District Court, and we're here today on review of a decision of the District Court and, of course, the Social Security Administration and its administrative law judge for the finding against Mr. Hall with regard to his chronic and severe low back pain, which we contend is disabling him from any form of significant factor in the ruling of the administrative law judge, which was affirmed by the Appeals Counsel and affirmed with clear criticism by the District Judge, is the fact that the administrative law judge rejected pretty much completely the findings of the principal treating physician, a neurosurgeon by the time Dr. Lucan treated Mr. Hall for a considerable period of time up to the date last insured, which was December 31st of 2012, and even up to the hearing date. He treated him literally on the hearing date, for that treating physician rule as it existed during the entire life of this case. And let me indicate I wanted to reserve two minutes for rebuttal. I forgot to mention that. I did mention it to the lady from the clerk's office. No, you have to keep track of your own time to reserve. Oh yeah, I'm sorry. Okay. In any event, some of the reasons this was just plain wrong, he indicates is inconsistent with other medical. What other medical is it inconsistent with? None that we can see. There's a lack of discussion of the factors in the treating physician rule in 1527C2, and he's devoid of any discussion of any recent treaters who expressed opinions in conflict with Dr. Lucan's opinion, and for that he evaluated Dr. Heller, who was actually hired by Mr. Hall's workers' comp carrier, not by Mr. Hall himself, who evaluated him. And Dr. Heller, as we quoted in our brief, her findings were consistent with regarding nerve root impingement, radiculopathy, and the need for surgery. And she said that she favored decompression and infusion. For that matter, and Dr. Miz, the prior treater who last treated Mr. Hall in 2011, since there's no indication of any divergence with him with Dr. Lucan in his last records, for that matter, he wanted to do a more significant surgery than the one that Dr. Lucan actually performed in 2013. The essence of some of the argument of what ALJ said and the arguments of Commissioner's counsel was that he failed to take into consideration a functional capacity evaluation 2008, which was dated old on the date of the hearing, I mean on the date of the hearing, old on the date last insured, old when Dr. Lucan first saw Mr. Hall. And for that matter, it does not appear that even Dr. Miz, who ordered that old FCE, was still abiding by it because he made comments clearly indicating increased severity of pain around late 2010, early 2011, and the need for the same fusion surgery that did not occur during Dr. Lucan's watch. There's no doctor cited by the ALJ who had any conflict or stated any conflict with Dr. Lucan and none are cited. And he refers to either the inconsistency with other medical records or the sympathy argument that pervades what the ALJ said. The idea that for some reason that his indicating some level of sympathy, the principal reason he thinks the ALJ thought that there was sympathy because he doesn't say anything why he was sympathetic or how he was sympathetic when other providers weren't, was that the petitioner was referred to Dr. Lucan by his internist rather than by a workers' comp carrier, which is an argument that is completely inconsistent with what is done in workers' comp in this state. People choose their own doctors. There is nothing about this fact that diminishes Dr. Lucan's credibility and the commissioner refers to this that was referred to not by the carrier but by an internist as substantial evidence. It's not substantial evidence to refute or dismiss a treating physician under the rule. Mr. Cohn, didn't the, I'm sorry, didn't the, you're absolutely correct that the ALJ did refer to sympathy. That's right. But the ALJ in doing so said that the opinions seem to contain a level of sympathy. And then the reason in that very sentence that was given is as they are not supported by the overall evidence. The problem is there is no evidence he cites, not one iota of evidence that he cites that's inconsistent with what Dr. Lucan says. And for that matter, as I indicated in our brief, Dr. Heller, the IME doctor for the carrier, was pretty much on point on the same things about this pain generator from the nerve impingement of the herniation. Didn't Dr. Heller, I read Dr. Heller to conclude that Hall could perform light work. Is that reading correct or not? It does not appear correct. And for that matter, she, in my opinion, is inconsistent. She's not correct in that that's not what she indicated? Well, she said that, but my feeling is that based on some of the other things she said about the pain generation is inconsistent. And there's nothing that she, and she doesn't point to anything that shows that he could do light work. And Dr. Lucan, who actually is a treater, I had been treating him for two years up to the date last insured and continued for another two years after that and further syndicated he could not work. And there's nothing in any record of any provider that indicates he can't work. And the treating physician rule has to be given precedence. And there's nothing that the ALJ said that would indicate that there's any provider who is really disagreeing with him as to the condition of his... We're saving two minutes for Rebellin. You're on it right now. Okay. I will be back then for Rebellin. Thank you. Thank you, Counsel. Mr. Tate, Ms. Tate. Good morning. My name is Christy Tate on behalf of the Acting Commissioner. As an initial matter, Dr. Lucan was not the only principal treating doctor for Mr. Hall. Dr. Lucan during the period at issue in this case is March of 2007 to December of 2012. Mr. Hall's treating physician during that time was Dr. Miz as of March 2007 all the way until he switched to Dr. Lucan in March of 2011. So Dr. Lucan's treatment of Mr. Hall is relevant from the time he started in March of 2011 through the date last insured, which is December of 2012. Mr. Hall argues that, for example, Dr. Heller didn't do anything to support her opinion that in spite of his severe back pain and his possible need for future surgery, that he could also perform light work as outlined in the 2008 Functional Capacity Evaluation. That is not true. Dr. Heller performed a physical examination of Mr. Hall, wherein Mr. Hall demonstrated no pain or discomfort except when he was rising from sitting to standing. Dr. Heller noticed that and the ALJ acknowledged that as well, as well as her opinion that he could nevertheless perform light work. And in recognition of that pain, the ALJ limited Mr. Hall to, in the RFC, he could do 30 minutes of sitting and 30 minutes of standing each, and he could alternate as needed in recognition of his pain. It is not the case that the ALJ's reasons for discounting Dr. Lucan's opinion were not supported by substantial evidence. For example, the objective evidence supports the ALJ's decision. In 2010, Mr. Hall had a consultative examination with Dr. Jane, wherein he had full range of motion in his legs and there was no issues with his mobility. Moreover, when he reported to his pain doctor, to whom Dr. Miz referred him because of his ongoing pain, Mr. Hall told Dr. Beck that his pain was well-controlled with his medication. He just had a little bit of breakthrough pain and that the physical therapy was working. Moreover, all of the opinion evidence, other than Dr. Lucan's opinion, supports the ALJ's decision. We have the initial Functional Capacity Evaluation 2008, which was endorsed by Dr. Miz, the treating spinal surgeon, in both August of 2008 and then again in August of 2010. Subsequently, Dr. Hutchison, who was an independent evaluator of both Mr. Hall and all of his records, found that he could perform light work. That was in late 2010. Then we have Dr. Heller, who again in 2011, November of 2011, Dr. Heller evaluated Mr. Hall and all of his records and said that he could perform light work. Dr. Lucan's most recent opinion that Mr. Hall was off work was only three months later, in February of 2012. The argument that this Functional Capacity Evaluation is too remote in time to be relevant is not accurate, given the way that the treaters and examiners were updating their opinions with reference to his ability to do light work, as outlined in the Functional Capacity Evaluation. Can I ask you to comment on one aspect of Dr. Lucan's testimony? As I read the ALJ's opinion, Dr. Lucan's testimony seems to be discounted for four combined reasons. The first is that there was no consideration of the factors in the regulations, the regulations in particular about being unable to work. The ALJ commented that Dr. Lucan's opinion seems to be a product of sympathy. The ALJ also commented that Mr. Hall had been referred to Dr. Lucan by the internist. It seems, as your adversary is pointing out, that that may have been some type of adverse credibility finding in one way or another. But you still have Dr. Lucan concluding on four separate occasions that Mr. Hall is unable to work. Does the combined effect of those points trouble you at all? You're referring to the four reasons that the ALJ used to support his decision? Right. It doesn't trouble me at all. As an initial matter, each of Dr. Lucan's opinions in the record is a one-page sheet where he simply checkmarked. It says there's a section that says level of work activity, and he simply checked no work on four separate occasions. So while that is an opinion, the ALJ went to great lengths to discount it using the other factors, which included it's inconsistent with the other evidence in the record. And in terms of the sympathy argument, the ALJ, the primary reason why Dr. Lucan's opinions were discounted was because they were not supported by or consistent with the record. That was the primary reason, and under our regulations, that is enough. He went on to speculate that perhaps this outlier opinion came about because of sympathy, and he traced the relationship between Mr. Hall and Dr. Lucan. And under our regulations, an ALJ is supposed to examine the nature of the relationship, the extent, how a patient got to a doctor. And he tracked that all the way through the opinion with each of these doctors to evaluate the extent to which they were independent, or maybe less so. But the primary problem with Dr. Lucan's opinion is the fact that it's not supported by objective evidence or any of the other opinion evidence. Are there any other questions? No. You're through. Quit. Thank you. We respectfully request that the courts uphold the district court's opinion. Thank you. Thank you, counsel. Going back to what we said, this is hardly an outlined opinion. For that matter, as Justice indicated here, there were various reasons that there were problems with what the ALJ ruled. There was no consideration of the factors. And that even bothered Judge Aspin, who nonetheless, while he attacked this, he nonetheless decided in the end to give deference, which I don't think, I think that Judge Aspin said some right things but came to the wrong conclusions. We find ALJ erred in not explicitly considering the length, nature, extent of the treatment relationship, the frequency of Dr. Lucan's examination, Dr. Lucan's specialty, or type of test Dr. Lucan performed. That's Judge Aspin speaking. The sympathy argument, that is totally speculative, totally not supported by discussion by the ALJ. And for that matter, the only basis seems to be, and it's argued by the Commissioner's Counsel as well, that he was referred by an internist and possibly the fact that he has some sympathy because he had a worker's comp case or something like that, that's just wrongful. Those are not the kind of factors that are supposed to be considered. Referral by the internist? No. The main thing that I see in the ALJ's decision is a degree of antagonism toward the fact that Mr. Hall had a worker's comp claim. He is, Dr. Lucan is a neurosurgeon. His opinions are based on his specialty and the failure to give more than little weight was attacked by the district judge and is inconsistent with the rules. It was our contention, also based on his medications. Counsel, you're looking at the clock. Thank you. Thank you, Mr. Cohn. Thanks to both counsel and the case is taken under advisement.